## No. 3670.

GEORGE W. BANCKER & CO. *v.* JOHN AND HUGH BRADY, AND EVERETT LANE & CO. *v.* JOHN AND HUGH BRADY, consolidated.

Brady, a resident of Arkansas, proposed to Phelps & Co., residing in New Orleans, to ship them thirty bales of cotton, if they would furnish him fifteen hundred dollars in money and send him certain merchandise. The proposition was accepted and the contract was then formed. It was a sale of personal property perfected in Louisiana only by delivery. Before the delivery, either actually or constructively, the cotton was attached. Neither the cotton nor the bill of lading was delivered prior to the service under the attachment. Therefore the attachment must be maintained as good and valid.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley, J. A. & W. Voorhies*, for G. W. Bancker & Co., plaintiffs and appellees. *Percy Roberts*, for Everett Lane & Co. *Semmes & Mott*, for John Phelps & Co., intervenors and appellants.

TALIAFERRO, J. This is a contest mainly between G. W. Bancker & Co. and Everett Lane & Co., attaching creditors, and John Phelps & Co., claiming the possession of the property attached, and a right to it as consignees according to the destination given to it by the owners, to repay advances made to them at their request, in goods and money. John Phelps & Co. intervened in both attachment suits, setting up their claims to the property attached. The material facts seem to be that in February, 1871, John Brady, one of the defendants, shipped from their residence in the State of Arkansas, to John Phelps & Co., thirty bales of cotton. This was preceded by a letter of advice, in which he requested them to send him by the return boat fifteen hundred dollars in money and some supplies and cotton bagging, etc. The request was complied with, and on the fourth of April following the steamer that brought the cotton arrived at the port of New Orleans. At six o'clock A. M. of the fifth of April, the cotton was attached. On the fourth, the day of the arrival of the steamer, application was made on board the boat by the intervenors for the bill of lading, and they were answered that it had been sent around to their counting room. It turned out, however, that Phelps & Co. did not receive the bill of lading until the next day, and after the attachment had been levied. The plaintiffs, Bancker & Co. and Everett Lane & Co., had judgments against the defendants. There was judgment in favor of the attaching creditors in each case, dismissing the intervention, and Phelps & Co., the intervenors, have appealed.

The principal inquiry seems to be, had the intervenors, the consignees, acquired possession of the cotton, and were their rights perfected before the attachment was levied? The intervenors do not claim a privilege. They contend that the delivery to the carrier of the bill of lading intended for them, was a delivery to them; that this delivery of the bill of lading, while the cotton was in Arkansas, where the com-

mon law prevails, vested in the consignees the ownership of the property, and in that condition it was brought within the limits of the State of Louisiana, and they maintain that the question is not one of privilege but of ownership, under the laws of Arkansas.

Considered as a sale, and we incline to think the agreement between the parties partakes of the character of a sale, the law of Louisiana would seem to govern. Brady, a resident of Arkansas, proposes to Phelps & Co., residing in New Orleans, to ship them thirty bales of cotton if they would furnish him fifteen hundred dollars in money and send him certain merchandise. The proposition was accepted and the contract was then formed. It was a sale of personal property perfected in Louisiana only by delivery. Before the delivery, either actually or constructively, the cotton was attached. Neither the cotton nor the bill of lading was delivered prior to the seizure under the attachment.

We think the case is with the attaching creditors, and that the decree of the lower court was properly rendered.

Judgment affirmed.